

**FILED**

JUN 2 2 2006

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| HOT STUFF FOODS, LLC, F/K/A ORION FOOD SYSTEMS, LLC, | * * * | CIV. 06-4085 |
| Plaintiff, | * * | |
| -vs- | * * * | MEMORANDUM OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION IN PART AND SETTING BRIEFING SCHEDULE |
| MEAN GENE'S ENTERPRISES, INC., GENE OKERLUND, BLAZE OKERLUND, TODD OKERLUND, AND MARK MCKEE, | * * * * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Plaintiff filed a motion for preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Doc. 3. After a hearing was held on May 25, 2006, and after the parties submitted a Stipulation for Temporary Restraining Order (Doc. 24), the Court entered a Temporary Restraining Order. The Temporary Restraining Order (Doc. 26) provided that Defendants not contact Hot Stuff Foods licensees or franchisees, that Defendants not make business contacts for the purpose of selling Mean Gene Enterprises, Inc., product, and that Defendants not use or cause to be published the "Mean Gene's Burgers" or "Mean Gene's Pizza" names or logos. By its terms, the Temporary Restraining Order was effective through the date of the hearing on Plaintiff's Motion for Preliminary Injunction.

A Court trial was held on Plaintiff's Motion for a Preliminary Injunction on June 19, 20 and 21, 2006. At the completion of the trial on June 21, 2006, The Court orally announced that a preliminary injunction would issue prohibiting Defendants' use of the Mean Gene's Burger trademarks. The Court reserved ruling on the issues concerning the common law trademark claim and claims regarding covenants not to compete. The Court set forth the basis of its ruling on the Mean Gene's Burger trademarks on the record.

In determining whether to grant the preliminary injunction prohibiting Defendants' use of the Mean Gene's Burger trademarks, the Court considered the factors set forth in *Dataphase Systems, Inc., v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981). Under *Dataphase Systems*, whether

a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the plaintiff; (2) the state of balance between such harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest.

The Court found that the threat of irreparable harm to Plaintiff is substantial in that Plaintiff is involved in an ongoing business which utilizes the Mean Gene's Burger trademarks. In considering the state of balance between the harm to the Plaintiff and the injury that granting the injunction would inflict on Defendants, the Court found that the harm of not granting the preliminary injunction was greater to the Plaintiff than the harm to the Defendants in granting the preliminary injunction. In making this determination the Court observed that the Defendants did not yet have firm plans on their business operation, but that the Plaintiff had an ongoing operation which utilized the registered Mean Gene's Burger trademarks. Further, the Plaintiff had an obligation to its licensees and franchisees to protect its trademarks.

In determining the probability of Plaintiff's success on the merits, the Court relied on *Davis v. Walt Disney Co.*, 430 F.3d 901 (8th Cir. 2005), which case discusses the factors to be considered in evaluating whether a likelihood of confusion is caused by the use of a trademark in connection with goods or services. These factors are: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the defendants' mark; (3) the degree to which the allegedly infringing product competes with the plaintiff's goods; (4) the alleged infringer's intent to confuse the public; (5) the degree of care reasonably expected of potential customers; and (6) evidence of actual confusion. *See also, SquirtCo v. Seven-Up Co.*, 628 F.2d 1096, 1091 (8th Cir. 1980). The Court found the strength of the Plaintiff's mark to be strong. With regard to the similarity between Plaintiff's mark and Defendants' mark, the Court observed that the marks were identical.

In considering the degree to which the allegedly infringing product competes with Plaintiff's goods, the Court found that the goods Defendants contemplate providing are burgers, pizza and other convenience products, and that Defendants plan to provide such products in a similar market. In considering whether Defendants had an intent to confuse the public, the Court noted that Defendants wrote to Plaintiff's current customers. Although the Court noted Defendants' stated reasons for writing Plaintiff's current customers were not to create confusion, the Court found that

writing only to Plaintiff's current customers constituted some evidence of an intent to confuse the public.

The Court found a good degree of care would reasonably be expected of potential customers, the franchisees and licensees. Less care would be exercised by consumers of the food products. The Court also found that there was evidence of actual confusion on the part of franchisees and licensees. Once food products are available from both parties, there is a likelihood of future confusion on the part of consumers of food products. After considering all of the relevant factors, the Court found that the likelihood of confusion from the use of the Mean Gene's Burger trademarks is strong.

The Court did not find from the evidence presented at the Court trial that Plaintiff had unclean hands or was guilty of any fraud with regard to registration of the trademark. In conclusion, the Court found that Plaintiff was likely to succeed on Mean Gene's Burger trademark infringement claim.

The Court found that the public has an interest in maintaining the status quo and being able to rely on a registered trademark of an ongoing business. The Court found that this public interest exists even if the trademarks may eventually be set aside. For the above reasons and the reasons set forth orally by the Court on June 21, 2006, the Court is ordering a preliminary injunction against Defendants' use of the Mean Gene's Burger trademarks. Defendants waived any requirement for a bond on this preliminary injunction. Accordingly,

**IT IS ORDERED**:

(1) that the Motion for a Preliminary Injunction is granted at this time to the extent that Defendants are prohibited from using the Mean Gene's Burger trademarks;

(2) that the Court will rule on the common law trademark claim and claims regarding covenants not to compete as well as the issuance of a permanent injunction after reviewing further briefing from the parties;

(3) that Plaintiff shall serve and file its brief regarding its common law trademark claim and claims regarding covenants not to compete on June 28, 2006;

(4) that Defendants shall serve and file their brief regarding the common law trademark

claim and claims regarding covenants not to compete on July 6, 2006;

(5) By letter of today's date Defendants have indicated the desire to present additional evidence relating to the permanent injunction request. The additional evidence regarding the permanent injunction will be heard in Sioux Falls commencing at 9:00 a.m. on Friday, August 5, 2006. If the Court desires any additional briefing after receiving the additional evidence from the parties, a briefing schedule will be set at the end of the August 5, 2006, hearing.

Dated this 22nd day of June, 2006.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _Sharon Lowry_
(SEAL)   DEPUTY